IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DANIEL STARK, LLP,<br>    Plaintiff, | §<br>§<br>§ |
| v. | §<br>§<br>§<br>§ CIVIL ACTION NO. _____ |
| ANGEL L. REYES & ASSOCIATES<br>PC and ANGEL L. REYES, III,<br>    Defendants. | §<br>§<br>§ JURY DEMANDED<br>§ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff DANIEL STARK, LLP ("Plaintiff" or "Daniel Stark") files this Original Complaint against Defendants ANGEL L. REYES & ASSOCIATES PC AND ANGEL L. REYES, III (collectively, "Defendants") and in support thereof, would respectfully show the Court the following:

**NATURE OF ACTION AND JURISDICTION**

1. This is an action for trademark infringement and unfair competition under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* ("Lanham Act"); and for trademark infringement.

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Chapter 85 of the Judiciary and Judicial Procedure Code, 28 U.S.C. §§ 1331 and 1338.

3. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the district, and

Defendants have conducted business in the Southern District of Texas and are subject to the Court's personal jurisdiction with respect to this action. Specifically, venue is proper because Defendants' use of Plaintiff's trademark is likely to confuse consumers in the Southern District of Texas. *Thirsty Mule Winery, L.L.C. v. Wild Wild W., L.L.C.*, No. 6:19-CV-00041-ADA, 2019 WL 10302269 at *3 (W. D. Tex. May 13, 2019) (finding venue proper in the district where some of the allegedly deceived consumers were located).

## PARTIES

1. Plaintiff Daniel Stark, LLP is a Texas limited liability partnership and law firm, with its principal place of business at 100 W. William Joel Bryan Pkwy., Bryan, Texas 77803.

2. Defendant Angel L. Reyes & Associates PC is a Texas law firm, with its principal place of business at One Preston Centre, 8222 Douglas Avenue, Suite 400, Dallas, Texas 75225. That Defendant also has an office in Houston, Texas, at 3040 Post Oak Blvd., Suite 825, Houston, Texas 77056.

3. Defendant Angel L. Reyes, III is a Texas resident who may be served at 9746 Hathaway Street, Dallas, Texas 75220, or wherever he may be found.

## STATEMENT OF THE CASE

4. This lawsuit arises out of Defendants' intentional use of the Daniel Stark registered trademark to knowingly deceive and confuse potential clients who are searching specifically for Plaintiff's services. Defendants' scheme involves buying advertisements that will appear when searching for Plaintiff's names in Google.

5. Defendants' advertisements are confusingly similar to Plaintiff's and, at times, incorporated Plaintiff's trademark. In addition to including similar advertisements, Defendants' advertisements will often include a link to their website and an additional "click-to-call" button

2

that targets mobile devices and users. Instead of linking to the website, once the "click-to-call" button is tapped by a consumer, the advertisement causes the device to call to a predetermined phone number.

6. To further their objectives in this illegal scheme, Defendants have bid increasingly higher amounts to strategically place their own confusing advertisements next to—and often before—Plaintiff's own advertisements in the search results. Defendants have done so intentionally, knowing that having their advertisement appear next to or before Plaintiff's advertisements will cause a significant number of consumers specifically searching for Plaintiff to be confused and contact Defendants instead.

7. This is not a situation involving legitimate competitive advertising. Rather, Defendants here have knowingly and intentionally used Plaintiff's well-known trademark to deceive and confuse customers.

## FACTS

### Daniel Stark

8. Plaintiff's law firm, Daniel Stark Injury Lawyers (or "the Firm"), is a preeminent Texas personal injury law firm, representing injured parties in all types of personal injury cases. The Firm focuses on helping Texas injury victims and their families recover to the greatest extent possible, while at the same time using the legal system to make society a safer place to live.

9. Danny Daniel and Jonathan Stark, both Texas attorneys, founded the Firm in 2000. They met in 1997, graduated from Texas Tech University School of Law in 2000, and were admitted to practice law later that year. This year, the Firm is celebrating its 25 years of helping injured Texans navigate the legal system and be made whole.

10. The success of Daniel Stark is the result of decades of hard work and dedication to

building a strong reputation for aggressively representing Texas injury victims and their families. Over the years, Daniel Stark has built a strong referral base comprised of many satisfied clients and a strong reputation in the community for successfully representing Texas injury victims and their families.

11. This reputation is the result not only of the hard work of Daniel and Stark, but also of the significant effort and expense they have incurred in promoting themselves throughout Texas.

12. Plaintiff's advertising efforts stem from a desire to provide knowledge to and serve members of the community that are unfamiliar with the legal system or otherwise unaware of their legal rights. That commitment remains one of the driving forces behind the Firm's practice.

### The Daniel Stark Mark

15. Since at least 2012, the Firm has consistently and continuously used its name and trademark, including DANIEL STARK ("the Mark"), to identify and to promote their legal services to Texans.

16. The Mark is inherently distinctive and serves to identify and indicate the source of Plaintiff's services to the consuming public.

17. In accordance with the provisions of federal law, the Mark was registered on the Principal Register of the United States Patent and Trademark Office ("USPTO"). *See* U.S. Reg. No. US Registration No. 4213729. The registration is valid and subsisting and is incontestable under 15 U.S.C. § 1065. A true and correct copy of the registration is attached hereto as **Exhibit A**. The Mark was and remains registered for use in legal services and has been continuously used to promote Plaintiff's legal services.

18. Following Plaintiff's restructuring, the Mark was assigned from its prior owner, the Law Offices of Daniel & Stark, PC, to Plaintiff, Daniel Stark, LLP. This assignment was

properly recorded with the USPTO. The record of this assignment is attached hereto as **Exhibit B.**

## Daniel Stark's Well-Known Brand

19.     In order to build a strong brand for aggressively representing Texas injury victims and their families, Daniel Stark advertises on television, podcasts, newspapers, billboards, social media, and on the internet.  The Mark is consistently used in Plaintiff's advertisements across various media formats across Texas.  The advertisements themselves are strategically designed to position the Firm as leading attorneys capable of handling all types of personal injury claims, with a particular focus on single event car wrecks and motorcycle accidents.  The bulk of Plaintiff's advertising is in the following markets in Texas: Bryan/College Station, Waco, Killeen, Austin, and Tyler.

20.     Since 2000, Plaintiff has promoted the Firm using the Mark on television, internet, newspaper, social media, and billboard advertisements targeting the Bryan/College Station, Waco, Killeen, Austin, and Tyler markets.

21.     For each of these Texas markets, Plaintiff has run a variety of television and billboard advertisements throughout the years. At any given time, Plaintiff has numerous billboards in the above geographic markets.

22.     Plaintiff has expended a significant amount of time and resources marketing the Firm. In fact, Plaintiff has nine full-time employees that are solely focused on marketing and advertising for the Firm. The Firm's advertising budget has grown with the Firm, and the Firm dedicates a considerable sum towards promoting its brand.

23.     Additionally, founders Daniel and Stark have appeared on numerous national podcasts and have spoken at conferences across the globe, representing the Firm and displaying the Mark.

24. The use of television and billboard advertisements in these Texas markets, combined with the Firm's targeted publicity efforts, has allowed Plaintiff to reach millions and build an incredibly strong brand. By focusing on the Bryan/College Station, Waco, Killeen, Austin, and Tyler markets, Plaintiff has become a dominant player in the region.

25. For example, a review of the television advertisements Plaintiff has run in these Texas markets shows that the commercials obtain significant exposure for the Firm.

26. Plaintiff's advertisements, all of which prominently incorporate the Mark, have enabled Daniel Stark to develop very strong brand recognition in Texas, particularly in the Central and Southeast Texas regions.

27. As a result of Plaintiff's long use and promotion of the Mark, the Mark has become prominent to distinguish Plaintiff and its services from those of others, and to distinguish the source or origin of Plaintiff's services. As a result of these efforts by Plaintiff, the consuming public in these Texas markets widely recognizes and associates the Mark with Plaintiff.

28. As a result of Plaintiff's long use and promotion of the Mark, Plaintiff has acquired valuable and enforceable rights in the Mark.

29. As with their television, billboard, and podcast advertising, Plaintiff is also a leader among lawyers in using the internet and social media to advertise its legal services.

30. All the social media and search engine advertisements purchased by Plaintiff prominently include the Mark and clearly identify Daniel Stark as the source of the advertisement.

**Defendants' Infringing Scheme**

31. Defendant Angel L. Reyes is the sole shareholder of Defendant Angel L. Reyes & Associates PC.

32. Defendant Angel L. Reyes, as sole shareholder, directs and controls the activities of Defendant Angel L. Reyes & Associates PC; has the ability to bind Defendant Angel L. Reyes & Associates PC in transactions; and is responsible for Defendant Angel L. Reyes & Associates PC's advertising strategies, including its use of the Mark described herein.

33. Defendants are engaged in a deceitful scheme to trade on the goodwill and reputation of Plaintiff and the Mark in Texas, and to induce prospective clients who specifically seek out the Firm for its legal services into mistakenly contacting and engaging Defendants for their legal services instead.

34. To carry out their scheme, Defendants purchase the Mark as keyword advertisements through Google's search engine on web searches on computers and mobile devices and use them in conjunction with confusingly similar advertisements which often incorporate the Mark into the text of Defendants' advertisements. Upon information and belief, Defendants purchase the Mark as keyword advertisements because of the likelihood that consumers will be confused and quickly click on Defendants' advertisement, including the "click-to-call" button, not realizing that the link is not affiliated with Plaintiff.

35. As a result, Google searches for Daniel Stark result in search pages that display Defendants' advertisement, often directly below the Mark—and before Plaintiff's own similar advertisements—while often incorporating the Mark into the text of Defendants' advertisements, as shown in the screenshots below:



36.     As shown above, Defendants' online advertisements often include headers in larger and distinct font that incorporate the Mark. In the smaller text of the body of the

advertisement, Defendants' firm name is not always provided. As shown above, by including the Mark in the text of their advertisements, Defendants ensure that when someone runs a search for Daniel Stark or Daniel Stark Injury Lawyers, the Mark will appear in bold within Defendants' advertisements in the search results.

37. Besides including and highlighting the Mark, Defendants' search engine advertisements are designed to display generic terms that consumers might associate with any personal injury firm (for example, "The Award-Winning Law Firm" shown above). Consumers specifically searching for Daniel Stark are likely to believe that Defendants' advertisements are actually for Plaintiff, or that Defendants are somehow affiliated with Plaintiff. This is particularly true on mobile devices, where consumers are quickly searching, often when dealing with the stressful aftermath of an accident, the typeface of the advertisements is much smaller, and the only content displayed on the screen is an advertisement directly below the Mark, which consumers have entered as a search term.

38. Defendants' mobile search engine advertisements will often include, not simply a link to their own website, but also an additional "click-to-call" button that targets mobile devices and users. Instead of linking to a website, once the "click-to-call" button is tapped by a consumer, the advertisement causes the device to call a predetermined phone number. Consumers who click on the "click-to-call" button (intentionally or not) are then connected to a call center operated by Defendants. Consumers who click on the "click-to-call" button are not directed to any separate website or given any further information regarding Defendants before the call is made.

39. Also as part of their scheme, Defendants are bidding for the Mark as keyword advertisements. The effect of Defendants' higher bids is not only to drive up the cost for Plaintiff to purchase its own mark for keyword searches, but also to allow Defendants' advertisements to

9

appear next to or before Plaintiff's own advertisements. By having their advertisements appear before Plaintiff's, Defendants know that a large percentage of consumers searching specifically for Daniel Stark will be confused and click on the first advertisement listed, particularly if it includes the Mark within the header or text of the advertisement. By having their generic and confusing advertisements appear next to or before Plaintiff's advertisements, Defendants are able to confuse consumers and cause a higher number of consumers searching specifically for Daniel Stark to instead be directed to Defendants or to mistakenly call Defendants based on the advertisement without realizing that it is neither Plaintiff nor affiliated with Plaintiff.

40. In this manner, Defendants wrongfully induce prospective clients trying to reach Plaintiff into engaging Defendants' firm. The nature of their scheme leaves little doubt as to Defendants' bad-faith intent to trade on Plaintiff's goodwill and reputation.

41. Defendants have used and are using the Mark in commerce, including in Texas. Defendants' use of the Mark began long after Plaintiff developed rights in the Mark and after the Mark became famous in Texas.

42. Defendants are not affiliated with or sponsored by Plaintiff and have not been authorized by Plaintiff to use the Mark, or any mark confusingly similar to the Mark.

43. Plaintiff is aware of at least four other instances where Defendants have resorted to the same type of misconduct, wrongfully displaying another law firm's name in their search engine advertisements.

**Effect of Defendants' Scheme**

44. Defendants' unauthorized use of the Mark is likely to cause confusion, to cause mistake, and/or to deceive customers and potential customers of the parties, at least as to some affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship,

or approval of Defendants' services by Plaintiff.

45. Defendants' unauthorized use of the Mark falsely designates the origin of their services and falsely and misleadingly describes and represents facts with respect to Defendants and their services.

46. Defendants' unauthorized use of the Mark enables Defendants to trade on and receive the benefit of goodwill built up at great labor and expense by Plaintiff over the years, and to gain acceptance for their services not solely on their own merits, but on the reputation and goodwill of Plaintiff, the Mark, and Plaintiff's services.

47. Defendants' unauthorized use of the Mark is likely to dilute the famous Mark as their use weakens the ability of the Mark to clearly and unmistakably distinguish the source of Plaintiff's services.

48. Defendants' unauthorized use of the Mark unjustly enriches Defendants at Plaintiff's expense. Defendants have been and continue to be unjustly enriched by obtaining a benefit from Plaintiff by taking undue advantage of Plaintiff and its goodwill. Specifically, Defendants have taken undue advantage of Plaintiff by trading on and profiting from the goodwill in the Mark developed and owned by Plaintiff, resulting in Defendants wrongfully obtaining a monetary and reputational benefit for their own business and services.

49. Defendants' unauthorized use of the Mark removes from Plaintiff the ability to control the nature and quality of the services provided under the Mark, and places the valuable reputation and goodwill of Plaintiff in the hands of Defendants, over whom Plaintiff has no control.

50. Unless these acts of Defendants are restrained by this Court, they will continue, and they will continue to cause irreparable injury to Plaintiff and to the public for which there is no adequate remedy at law.

51. Additionally, Plaintiff's Mark is registered for legal services. By using the Mark in advertising their own legal services, Defendants engaged in counterfeiting and attempted to pass off their own legal services as those of Plaintiff.

## CAUSES OF ACTION

### COUNT I: FEDERAL TRADEMARK INFRINGEMENT

52. Plaintiff repeats the allegations above as if fully set forth herein.

53. The acts of Defendants complained of herein constitute infringement of the federally registered Mark in violation of 15 U.S.C. § 1114(1).

54. Defendants' acts complained of herein have been deliberate, willful, intentional, or in bad faith, with full knowledge and conscious disregard of Plaintiff's rights in the Mark, and with intent to cause confusion and to trade on Plaintiff's vast goodwill in the Mark. In view of the egregious nature of Defendants' infringement, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

### COUNT II: VIOLATION OF LANHAM ACT SECTION 43(a)

55. Plaintiff repeats the allegations above as if fully set forth herein.

56. The acts of Defendants complained of herein constitute trademark infringement, false designation of origin, false or misleading descriptions or representations of fact and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57. Plaintiff has been damaged by Defendants' acts of trademark infringement, false designation or origin, false or misleading descriptions or representations of fact and unfair competition.

### COUNT III: TEXAS COMMON LAW TRADEMARK INFRINGEMENT

58. Plaintiff repeats the allegations above as if fully set forth herein.

59. Plaintiff has established ownership of the "Daniel Stark" trademark through use in commerce.

60. "Daniel Stark" is eligible for protection as a trademark under Texas common law.

61. Plaintiff is the senior user of the Mark.

62. The acts of Defendants complained of herein constitute infringement of the Mark.

63. Defendants' infringing use of the Mark is likely to confuse consumers.

64. The likelihood of confusion causes irreparable injury for which there is no adequate legal remedy.

65. Defendants' trademark infringement caused Plaintiff to suffer actual damages, including, but not limited to, lost profits and the increased cost of bidding on the Mark.

### COUNT IV: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

66. Plaintiff repeats the allegations above as if fully set forth herein.

67. There was a reasonable probability that Plaintiff would have entered into business relationships with potential clients that searched for Daniel Stark.

68. Defendants acted with a conscious desire to prevent the relationships from occurring or knew the interference was certain or substantially certain to occur as a result of its intentional diversion of potential clients.

69. Defendants' conduct was independently tortious or unlawful as their conduct also constitutes common law trademark infringement and misappropriation of name and likeness.

70. The interference proximately caused Daniel Stark injury by increasing the cost for Daniel Stark to bid on its own name and lose prospective clients.

71. Moreover, Plaintiff suffered actual damage or loss as a result, including lost profits from prospective clients.

Case 4:25-cv-04222   Document 1   Filed on 09/05/25 in TXSD   Page 14 of 15

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that:

(a)     Defendants, as well as their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be permanently enjoined and restrained from using the Mark and any other mark or name confusingly similar to or likely to cause dilution of the Mark, including by purchasing the Mark or any confusingly similar marks as keyword advertisements, and from any attempt to retain any part of the goodwill misappropriated from Plaintiff, including but not limited to by purchasing the Mark as keywords;

(b)     Defendants, as well as their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be required to deliver up and destroy all internet postings and advertisements, and any other materials bearing or using the Mark and/or any other mark or name that is confusingly similar to or likely to dilute the Mark;

(c)     Defendants be ordered to file with this Court and to serve upon Plaintiff, within thirty (30) days after the entry and service on Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

(d)     Plaintiff recover all damages they have sustained as a result of Defendants' activities, and that said damages be trebled. Also, the law provides specific relief when a party, as here, willfully infringes on a registered Trademark or willfully misappropriates a party's name and/or likeness for commercial purposes. *See* 15 U.S.C. § 1117, which provides for statutory damages for willful conduct of not more than $2,000,000 per counterfeit mark, or as the Court considers just. Plaintiff seeks these statutory damages, where appropriate;

(e)     An accounting be directed to determine Defendants' profits resulting from their

14

activities and that such profits be paid over to Plaintiff, increased as the Court finds to be just under the circumstances of this case;

      (f)      Plaintiff recover its reasonable attorneys' fees;

      (g)      Plaintiff recover its costs of this action and prejudgment and post-judgment interest; and

      (h)      Plaintiff recover such other relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff demands a jury trial in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**BECK REDDEN LLP**

By:   */s/ David J. Beck*
      David J. Beck
      State Bar No. 00000070
      Federal ID No. 16605
      dbeck@beckredden.com
      Alex B. Roberts
      State Bar No. 24056216
      Federal ID No. 865757
      aroberts@beckredden.com
      Catherine Buthod
      State Bar No. 24140530
      Federal ID No. 3888692
      cbuthod@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**COUNSEL FOR PLAINTIFF DANIEL STARK, LLP**